IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **CHRISTOPHER HANTAK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 09-CV-0930-MJR-PMF |
| | ) | |
| **VILLAGE OF PONTOON BEACH, ILLINOIS; AARON MORGAN, individually, and in his official capacity; CHRIS MODRUSIC, individually and in his official capacity; and CHIEF CHARLES LUEHMANN, individually and in his official capacity as Chief of the Village of Pontoon Beach Police Department,** | ) ) ) ) ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

On July 29, 2010, Plaintiff Hantak moved for leave to excuse the late disclosure of an expert witness to be used in his main case. Magistrate Judge Philip M. Frazier, to which the Court has generally referred non-dispositive pretrial matters, denied leave one week later. (Doc. 36.) Hantak has appealed that decision (Doc. 38), and the Defendants opposed the appeal (Doc. 40). After careful review of submissions by both sides of this lawsuit, the Court at Doc. 45 allowed the deposition of Dr. Mary Case indicating a detailed order would follow. This is that order.

One of the main issues in Hantak's hybrid case under both state law and 42 U.S.C. § 1983 involves gunshot wounds. His complaint alleges that Defendant Aaron Morgan, a police officer of Defendant Pontoon Beach, shot him multiple times around November 9, 2008 while Hantak was responding as an off-duty Saint Louis police officer to an incident at a sports bar in Madison County, Illinois. He alleges that he was shot from behind, but the Defendants on July 6, 2010 timely disclosed Dr. Jane Turner as an expert for their case, whose opinion of the nature of the gunshot

wounds directly contradicts Hantak's position as to how he was shot. Hantak sought the opinion of Dr. Mary Case to rebut that position and timely disclosed her on July 29 for purposes of rebutting Dr. Turner. *See* Fed. R. Civ. P. 26(a)(2)(C) (allowing for the disclosure of a rebuttal expert 30 days after the other party's disclosure). Just because the disclosure was timely for rebuttal does not mean that it was timely for purposes of proving the main case, and Hantak seeks leave for late disclosure because he wants to use Dr. Case not just for rebuttal but also for the main case. Hantak did not disclose Dr. Case earlier because he expected to rely on the opinions of Drs. Todd Brickman and Gary Peterson on the issue of the gunshot wounds, as they were the surgeons responsible for repairing his gunshot wounds when he was in the emergency room of Saint Louis University Hospital and whose operative reports indicated that they agreed with Hantak's side of the story. The surgeons, however, apparently resisted Hantak's attempts to have them render an expert opinion.

The order denying leave to disclose the expert was not a dispositive order. The Court may reconsider any pretrial matter referred to a magistrate judge "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1) (2006); *accord* Fed. R. Civ. P. 72(a); S.D. Ill. R. 73.1(a). The magistrate judge's decision analyzed Hantak's motion for untimely disclosure as a motion to modify the scheduling order, which set May 7, 2010 as the deadline for Hantak's disclosure of experts. (Doc. 36.) "Good cause" is the appropriate standard for determining if a scheduling order should be modified. *See* Fed. R. Civ. P. 17(b)(4). Hantak argues that the decision should be reconsidered as contrary to law because the magistrate judge did not analyze the issue under the standard articulated in *David v. Caterpillar, Inc.*, 324 F.3d 851 (7th Cir. 2003). *David* discusses four factors to determine if a court abused discretion when it allowed or denied an undisclosed expert to be used at trial:

> (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date.

2

*Id.* at 857. The problem with relying directly on *David* is due to the different procedural postures. *David* was about in-trial and post-trial rulings allowing an expert to testify that had not been disclosed. *Id.* The standard for determining that question is if the failure to disclose was "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Hantak presently seeks, before trial, to have the late disclosure of the expert count as being timely disclosed, thus requiring a court order modifying the scheduling order under the good-cause standard previously discussed.

      Citing *David* was not entirely misplaced, though. Factor-balancing tests similar to the one in *Davis* have been used by other courts, specifically in the context of modifying scheduling orders to allow for the untimely disclosure of experts. *E.g.*, *Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997) ("We consider four factors in determining whether the district court abused its discretion in holding that Reliance did not show good cause: '(1) the explanation for the failure to [submit a complete report on time]; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice.'" (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990))). Based on the similarity of tests, the appropriate standard to determine whether good cause has been demonstrated is a test that balances the concerns of the late party (its circumstances surrounding its failure to disclose timely and the importance of the testimony it seeks to have excused as timely) versus the concerns of the opposing party (prejudice due to the late disclosure and the ability for that prejudice to be cured).

      That standard was not applied in this case. The prior decision only considers the circumstances surrounding the failure to disclose timely and did not consider the importance of the testimony sought to be excused. The decision also apparently did not consider the prejudice against the opposing party or the ability for that prejudice to be cured. Accordingly, the order must be reconsidered. Although the order must be set aside, the Court can recommit the matter to the magistrate judge for further determination, but the Court can also vacate the pretrial referral and

make the determination itself. 28 U.S.C. § 636(b)(1). Because this matter requires prompt reconsideration due to the pending deadlines and trial and can be decided on the briefs, the Court will, for this matter only, vacate the reference to the magistrate judge and decide the matter itself.

When examining the concerns of the late party, the balance of the issues falls slightly in favor of Hantak. As the Defendants rightly point out, we live in a world of deadlines. Hantak never discussed in his motion or his appeal at what time the surgeons began resisting the issuance of an opinion regarding the gunshot wounds. If it were the case that the surgeons resisted very close to the deadline for disclosure, necessitating a scramble to find another expert, then Hantak would have clearly won the day on this issue. Instead, Hantak gives no details to the surgeons' resistance, leaving the Court to speculate as to why Hantak did not retain another expert when the surgeons were unwilling or, if he really wanted their opinion, subpoenaed them for deposition. However, the testimony of Dr. Case appears to be important enough for Hantak's case to overcome, barely, the failure of Hantak's counsel to account for the resistance of Drs. Brickman and Peterson. Without the testimony of Dr. Case, Hantak has no medical support for his position given the resistance from Drs. Brickman and Peterson.

When examining the concerns of the opposing party, the balance falls in favor of Hantak. The Defendants' concern regarding the ability to depose Dr. Case and contest her competency as an expert via a motion under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), is legitimate. In other cases in which this issue arises closer to trial, the concern would be the end of the inquiry; however, this concern is easily cured by extending the deadlines presently set in the case for deposing Dr. Case and contesting her competency as an expert. There is ample time before trial in this case to take care of these issues. Additionally, the Defendants already have an expert on the gunshot wound issue, so the Court is not confronted with the case that Hantak sought to disclose an

4

expert when the Defendants had no one and would have to scramble to find a rebuttal expert, which would have resulted in a very different holding regarding this aspect of the analysis.

Because the balance of the concerns of the parties falls in favor of Hantak, he has demonstrated good cause for the modification of the scheduling order. As scheduling orders should be modified on the showing of good cause, the prior decision was contrary to law. Accordingly, on the appeal by Plaintiff Hantak (Doc. 38), the Court **SETS ASIDE** the order of the magistrate judge (Doc. 36) and, due to the need to resolve this matter promptly, **VACATES** the reference to the magistrate judge of the motion for late disclosure (Doc. 35). The Court additionally **GRANTS** Hantak's motion (Doc. 35). Dr. Case will be considered by the Court as timely disclosed as an expert for Hantak's main case. The Court on its own motion **SETS** the following deadlines: the parties may depose Dr. Case no later than **September 23, 2010** and the Defendants may file a *Daubert* motion with respect to Dr. Case no later than **October 7, 2010**.

    **IT IS SO ORDERED.**

    DATED September 3, 2010.

                                        s/ Michael J. Reagan
                                        **MICHAEL J. REAGAN**
                                        **United States District Judge**